UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:22-CV-14-FL

| | |
|---|---|
| **GEORGE CANSLER, on his own behalf, and on behalf of a class of those similarly situated,**<br><br>*Plaintiff,*<br><br>v.<br><br>**UNIVERSITY HEALTH SYSTEMS OF EASTERN CAROLINA, INC., EAST CAROLINA HEALTH-CHOWAN, INC., and FIRSTPOINT COLLECTION RESOURCES, INC.,**<br><br>*Defendants.* | **ECU HEALTH'S MOTION TO DISMISS**<br><br>*JURY DEMAND* |

Pursuant to Federal Rule of Civil Procedure 12(b)(6), University Health Systems of Eastern Carolina, Inc. and East Carolina Health-Chowan, Inc. ("ECU Chowan") (collectively, "ECU Health") respectfully move the Court to dismiss Plaintiff George Cansler's ("Cansler") First Amended Class Action Complaint ("Amended Complaint").[1]

In June 2018, Cansler sought emergency medical treatment at ECU Chowan. Prior to treatment, he signed a standard consent document wherein he agreed to pay for any portion of the hospital's charges that were not paid by his commercial insurance carrier, Blue Cross Blue Shield of North Carolina ("Blue Cross"). Cansler does not contend that he asked any questions regarding

---

[1] By filing this Motion, ECU Health does not intend to waive any of their affirmative or general defenses. ECU Health's knowledge of third party involvement in this action is limited at this juncture. To the extent this matter progresses (which it should not), ECU Health specifically asserts that Cansler failed to join a necessary and/or an indispensable party under Federal Rule of Civil Procedure 19 -- namely, Cansler's alleged insurer, Blue Cross Blue Shield of North Carolina ("Blue Cross"). To the extent Blue Cross is a necessary and indispensable party, Cansler's claims against ECH Health should be dismissed under Rule 12(b)(7).

how much his medical treatment would cost when he agreed to these terms. And, consistent with its obligations under the Emergency Medical Treatment and Active Labor Act ("EMTALA") to provide a medical screening without taking actions that might discourage such care, ECU Chowan did not affirmatively volunteer the potential costs of Cansler's treatment. *See* 42 U.S.C. § 1395dd; 26 C.F.R. § 1.501(r)-4(c)(2); 42 C.F.R. 489.24(d)(4)(iv).

After the medical services had been rendered on an "in network" basis, Cansler and Blue Cross were charged the agreed-upon, discounted amount that Blue Cross negotiated on Cansler's behalf. Cansler now refuses to pay this pre-negotiated, discounted amount. Although ECU Chowan charged Cansler exactly what he agreed to pay in the consent document that he signed -- all charges not paid by his insurer -- he claims that ECU Chowan breached the terms of the consent because, according to Cansler, the discounted rate that was negotiated on his behalf is unreasonably high. Cansler also claims that ECU Chowan's alleged failure to disclose the potential costs of his treatment in the emergency room represents a breach of the consent agreement he signed with ECU Chowan at the time of his treatment, as well as a violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"). *See* § 75-1.1. Further, in an attempt to transform this matter into something that it is not, Cansler attempts to assert his claims as a class action on behalf of every patient who visited ECU Chowan's emergency department to obtain a CT scan, signed a consent, and had to pay ***any price***, whether insurer-negotiated or the hospital's standard charges.

At their core, Cansler's claims effectively ask the Court to find that commercially insured patients simply can ignore the contractual, discounted rates that were negotiated on their behalf by their insurers, and instead can choose to pay whatever amount they deem reasonable. He also asks the Court to create an impossible dilemma for emergency departments regarding the disclosure of

prices during the consent process, forcing them to choose between committing a purportedly unfair and deceptive act or violating EMTALA.

As if these issues alone were not enough, Cansler's claims also are facially meritless for the following independent reasons:

- ***First***, Cansler's breach of contract and unjust enrichment claims are barred by the applicable three-year statute of limitations. N.C.G.S. § 1-52(1). North Carolina law makes clear that the statute starts to run at the time the claim(s) accrued. N.C.G.S. § 1-15(a). For Cansler's breach of contract and unjust enrichment claims, the statute started to run in 2018 -- more than three years before he commenced the underlying action in 2022.

- ***Second***, Cansler has failed to sufficiently plead breach of contract as the consent document's express price term is sufficiently definite under North Carolina law. Indeed, the North Carolina Court of Appeals has reached such a conclusion in construing price terms nearly identical to the one at issue in this case. *See Shelton v. Duke University Health System, Inc.*, 179 N.C. App. 120, 633 S.E.2d 113 (2006); *Gleason v. Charlotte-Mecklenburg Hosp. Auth.*, 2022-NCCOA-420, 873 S.E.2d 70 (N.C. App. June 21, 2022). These courts refused to imply a "reasonable price" term given the existence of a definite price term.

- ***Third***, the doctrine of unjust enrichment does not apply as a matter of law under the alleged facts. Unjust enrichment does not apply when an express contract exists, *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988), nor does it apply when the plaintiff merely seeks to recoup voluntary payments for services that the defendant provided to the plaintiff, *Brown v. Loancare, LLC*, 2020 WL 7389407, at *6 (W.D.N.C. Dec. 16, 2020). Both of which are the case here. Further, even if Cansler were to argue that his payments to ECU Chowan were somehow involuntary, such would still not be "unjust" because the amount he paid is less than the value that he alleges is reasonable for such services.

- ***Fourth***, Cansler cannot show that ECU Health's alleged acts were in or affecting commerce -- a necessary element of a UDTPA claim -- because the UDTPA specifically exempts "professional services rendered by a member of a learned profession" from its definition of commerce. N.C.G.S. § 75-1.1(b). In a virtually identical case, the North Carolina Court of Appeals held that a hospital's alleged failure to disclose the cost of its services until after the services had been rendered came squarely within the learned profession exemption, meaning the plaintiff could not state claim under the UDTPA. *See Shelton*, 633 S.E.2d 113.

- ***Fifth***, ECU Health's alleged actions and omissions do not constitute unfair or deceptive acts under the UDTPA. Because Cansler's claims are all premised upon the existence or interpretation of the consent that Cansler signed at ECU Chowan,

3

his claims sound in contract, and applicable law is clear that mere breaches of contract, even if intentional, do not come within the prohibitions of the UDTPA. *Elrod v. WakeMed*, 2021 WL 4312557, *14 (E.D.N.C. Sep. 22, 2021). Further, to the extent the Court finds Cansler's claims are premised on fraudulent concealment, Cansler -- who does not alleged that he asked about the cost of services -- has not adequately alleged that ECU Chowan owed him a duty to disclose its prices.

- ***Sixth***, Cansler has failed to plead that ECU Health's alleged actions proximately caused his alleged damages. In particular, while Cansler contends that ECU Health maintained a policy whereby they do not disclose prices to patients who ask for such information, Cansler never alleges that he himself actually asked about the cost of his medical services. As such, he cannot establish actual reliance on ECU Chowan's purported fraudulent concealment.

As described in the Memorandum of Law that is being filed simultaneously herewith, Cansler's attempts to essentially upend how the healthcare system deals with commercially insured patients are directly contrary to North Carolina law. Indeed, multiple courts have considered virtually identical circumstances and have concluded that no theory of liability -- be it a UDTPA violation, breach of contract, or other similar theory -- exists. Thus, pursuant to this authority and Federal Rule of Civil Procedure 12(b)(6), the Court should dismiss Cansler's claims against ECU Health with prejudice.

4

313266291.1

Case 4:22-cv-00014-FL   Document 50   Filed 08/25/22   Page 4 of 5

Respectfully submitted,

/s/ Erin Palmer Polly
Erin Palmer Polly (TN Bar #22221)
erin.polly@klgates.com
Gibeault C. Creson (TN Bar #32049)
beau.creson@klgates.com
Kaitlin E. White (TN Bar #037655)
kaitlin.white@klgates.com
K&L Gates LLP
501 Commerce Street, Suite 1500
Nashville, Tennessee 37203
(615) 780-6700
(615) 780-6799

Terrence M. McKelvey (N.C. Bar #47940)
terrence.mckelvey@klgates.com
K&L Gates LLP
501 Commerce Street, Suite 1500
Nashville, Tennessee 37203
(615) 780-6700
(615) 780-6799

Robert J. Higdon, Jr. (N.C. Bar #17229)
bobby.higdon@klgates.com
K&L Gates LLP
430 Davis Drive, Suite 400
Morrisville, North Carolina 27560
(919) 466-1190

*Counsel for Defendants University Health Systems of Eastern Carolina, Inc. and East Carolina Health-Chowan, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was served upon all counsel of record via the Clerk of Court's ECF system, this August 25, 2022.

/s/ Erin Palmer Polly