IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:22-CV-014-FL

| | | |
|---|---|---|
| GEORGE CANSLER, on his own behalf, and on behalf of a class of those similarly situated, | )<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | ORDER |
| v. | )<br>) | |
| UNIVERSITY HEALTH SYSTEMS OF EASTERN CAROLINA, INC. and EAST CAROLINA HEALTH-CHOWAN, INC, | )<br>)<br>)<br>) | |
| Defendants. | ) | |

This matter comes before the court on defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 50). The issues raised have been fully briefed, and in this posture are ripe for ruling. For the following reasons, the motion is granted.

### STATEMENT OF THE CASE

In amended complaint filed July 11, 2022, plaintiff claims on his behalf and on behalf of a proposed class that defendants University Health Systems of Eastern Carolina, Inc. ("Health Systems") and East Carolina Health-Chowan ("Chowan Hospital") violated North Carolina's Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1, *et seq*. ("UDTPA"), on account of defendants' wrongful billing practices (Count One). Plaintiff seeks declaratory judgment that defendants cannot collect in payment more than the reasonable price of medical services rendered, and disgorgement of overpayments (Count Two). Defendant Chowan Hospital is sued also for breach of contract for described medical services (Count Five). In the alternative, plaintiff pleads

this defendant has been unjustly enriched (Count Six). Plaintiff's amended complaint includes allegations also against Firstpoint Collection Resources, Inc. ("Firstpoint"), related to asserted wrongful collection actions (Counts Three and Four); however, these claims voluntarily were dismissed. In sum, plaintiff's complaint[1] remaining seeks certification of a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaratory and injunctive relief, disgorgement, statutory and compensatory damages, and attorneys' fees and costs.

## STATEMENT OF FACTS

The relevant facts stated in the complaint may be summarized as follows. Defendant Health Systems is a system of nine hospitals, (see compl. ¶ 3-4), and defendant Chowan Hospital is a hospital in that system (see id. ¶ 5). On June 6, 2018, plaintiff visited the emergency room at defendant Chowan Hospital to receive treatment for "pain . . . due to a kidney stone." (Id. ¶ 57). Plaintiff paid $100.00 upon arrival, received various healthcare services, including a CT scan, and signed a form agreeing to pay for such services. (See id. ¶ 60-62).

On June 19, 2018, Blue Cross, plaintiff's insurer, sent plaintiff an explanation of benefits listing a total billed amount of $6,251.70, member savings of $226.68, a payment of $1,326.11 paid by Blue Cross, and a remaining balance of $4,262.11. (See id. 65-66). Defendants sent plaintiff a bill for $4,262.11 on June 22, 2018, and again on July 22, 2018, and August 22, 2018. (See id. ¶ 70-72). Plaintiff "made three $50[.00] payments . . . between August and October 2018." (Id. ¶ 73). "On April 7, 2019, [defendants] apparently applied an additional $75.41 in payment to the bill in error." (Id. 76).

"The Medicare reimbursement price for a CT scan . . . in North Carolina in 2018 was $302[.00] and in 2021 was $315[.00]." (Id. ¶ 36). According to plaintiff, Healthcare Bluebook, a

---

[1] Hereinafter, references to the "complaint" or "compl." refer to plaintiff's amended complaint at DE 48.

"widely used estimator of fair prices for services by hospital," suggests charging between $278.00 and $472.00 for a CT scan. (Id. ¶ 115). Additionally, according to plaintiff, the North Carolina State Treasurer has indicated that prices for privately insured outpatient services are reasonable when set at 225% of the Medicare price, which in this instance would have produced a price of $679.00. (See id. ¶ 116-17).

## COURT'S DISCUSSION

A.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).[2]

B.  Analysis

1.  Statute of Limitations

Defendants argue that plaintiff's claims for breach of contract and unjust enrichment are barred by the statute of limitations. According to defendants, the contract claim accrued either on June 19, 2018, when plaintiff's insurer notified plaintiff that he owed a balance of $4,262.91 for

---

[2] Throughout this order, internal quotation marks and citations are omitted unless otherwise specified.

his procedure, or on June 22, 2018, when defendants sent plaintiff an initial bill. Defendants argue in addition that the unjust enrichment claim accrued June 2018, when plaintiff tendered his first payment. Plaintiff argues in contrast that where defendants continue to breach the agreement, the statute of limitations on his contract claim has not run. Additionally, he alleges that an April 7, 2019, payment of $75.41 restarted the clock for statute of limitations purposes.

North Carolina provides a statute of limitations of three years for actions on "a contract [or an] obligation or liability arising out of a contract." N.G.G.S. §1-52(1). Plaintiff's claim for "unjust enrichment [is likewise] subject to a three-year statute of limitations." Christenbury Eye Center, P.A. v. Medflow, Inc., 370 N.C. 1, 7 n.4 (2017). Under North Carolina law, "[a] cause of action for a suit involving a breach of contract accrues as of the date of breach." MacDonald v. Univ. of N. Carolina at Chapel Hill, 299 N.C. 457, 463 (1980). "The statute begins to run on the date the promise is broken." Penley v. Penley, 314 N.C. 1, 20 (1985). "When the right of the party is once violated, even in ever so small a degree, the injury, in the technical acceptation of that term, at once springs into existence and the cause of action is complete." Pearce v. N. Carolina State Highway Patrol Voluntary Pledge Comm., 310 N.C. 445, 449 (1984). Even where "defendants remain[] in breach of [a] contract . . . a party must timely bring an action upon discovery of an injury to avoid dismissal of the claim." Chisum v. Campagna, 376 N.C. 680, 701 (2021); see also Acts Retirement-Life Communities, Inc. v. Town of Columbus, 248 N.C. App. 456, 461 (2016) (rejecting an argument that delivery of each allegedly illegal bill restarted the limitations period). Further damage stemming from an allegedly illegal action "aggravates the original injury" rather than tolling the statute of limitations. Pembee Manufacturing Corp. v. Cape Fear Construction Co., Inc., 313 N.C. 488, 494 (1985).

The complaint states that defendants sent plaintiff three bills for $4,162.91 on the 22nd of

4

June, July, and August 2018. (See compl. ¶¶ 70-72). Plaintiff acknowledges that he received all three bills, in fact, he "wrote a letter to [defendants'] central billing office disputing the charges and requesting further information" on September 27, 2018. (Compl. ¶ 74). He did not, however, file this action until February 18, 2022, over three years after his receipt of the first bill placed him on notice of the asserted breach of contract action. Where the limitations period elapsed in June 2021, three years after plaintiff received his first bill, his breach of contract claim must be dismissed as untimely.

In addition, as pertains to unjust enrichment, the explanation of benefits statement that plaintiff received on June 22, 2018, stated that Blue Cross had paid $1,326.11 towards the procedure, and plaintiff himself had paid $100.00 on June 6, 2018, when he visited the emergency room. (Compl. ¶¶ 57, 60, 65). Thus, plaintiff was on notice that defendants had received $1,124.11 more than the Medicare price, $747.11 more than 225% of the Medicare price, and $676.11 more than the Healthcare bluebook rate in June 2018. Nevertheless, plaintiff made three additional payments of $50.00 each later that year. (Compl. ¶ 73). Where the limitations period elapsed in June 2021, three years after plaintiff received his explanation of benefits statement, his unjust enrichment claim must be dismissed as untimely.

Plaintiff argues that he was not on notice where defendants "changed [their] position regarding what he owed." (DE 54 at 27). Plaintiff, however, does not cite any cases that support this view. Moreover, plaintiff claims that the amount now in dispute, $2,998.70, is excessive and unreasonable. Where the three bills plaintiff received during the summer of 2018 listed balances in excess of the amount he now claims is unreasonable, plaintiff was on notice that defendants sought allegedly excessive payment. Plaintiff also fails to cite any case in support of his claim that a payment of about $75.00 mistakenly applied to his count in 2019 restarted the limitations period

5

rather than "aggravat[ing] the original injury." Pembee Manufacturing Corp., 313 N.C. at 494 (1985). Accordingly, plaintiff's contract and unjust enrichment claims must be dismissed where the limitations period has elapsed.

Plaintiff, on behalf of putative class members, seeks additionally a declaratory judgment "that they owe [d]efendants no more than the reasonable price for the medical services that they received," (compl. ¶ 160), on the issue of whether "[d]efendants implemented and maintained reasonable billing and hospital bill debt collection procedures and practices," (id. ¶ 161), and that defendants are "only allowed to undertake to collect the reasonable value of their service and [p]laintiff and class members are entitled to disgorgement of overpayments received by the [d]efendants." (Id. ¶ 165). Under North Carolina law,[3] "declaratory judgment actions are subject to the applicable statute of limitations, which is the one that governs the substantive right that is most closely associated with the declaration that is being sought." Chisum, 376 N.C. at 719. Because plaintiff's declaratory judgment claim asks the court to declare that defendants breached the contract by implementing unreasonable prices and policies, and to enforce a reasonable price term under a theory of quasi-contract, it is time-barred for the same reasons that plaintiff's breach of contract and unjust enrichment claims are time-barred. Plaintiff's declaratory judgment claim must also be dismissed pursuant to N.C.G.S. § 1-52(1) and Rule 12(b)(6).

    2.    UDTPA

Defendants argue that plaintiff's claim under the UDTPA is barred by the learned profession exemption. The UDTPA declares unlawful "unfair methods of competition in or

---

[3] "Federal courts sitting in diversity apply state substantive law and federal procedural law." Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 (1996). Therefore, although this action is filed under 28 U.S.C. § 2201, North Carolina substantive law continues to govern the underlying claim. See e.g. Staffing Advantage LLC v. Definitive Staffing Solutions, Inc., No. 7:20-cv-150, 2021 WL 2426340 at *9 (E.D.N.C. Jun. 14, 2021) (holding a declaratory judgment claim seeking interpretation of a contract time-barred where the limitations period for the underlying contract claim had elapsed under N.C.G.S. § 1-52(1)).

affecting commerce, and unfair or deceptive acts or practices." N.C.G.S. § 75-1.1(a). "'Commerce' . . . does not include professional services rendered by a member of a learned profession." N.C.G.S. § 75-1.1(b).

North Carolina courts "conduct a two-part inquiry to determine whether the learned profession exemption applies: first, the person or entity performing the alleged act must be a member of a learned profession[;] [s]econd, the conduct in question must be a rendering of professional services." Sykes v. Health Network Solutions, Inc., 372 N.C. 326, 334 (2019). The "exemption for medical professionals has been broadly interpreted." Id.; see also Hamlet H.M.A., LLC v. Hernandez, 262 N.C. App. 51, 60 (2018) ("There is no dispute that doctors and hospitals are members of a learned profession."); Wheeless v. Maria Parham Medical Center, Inc., 237 N.C. App. 591 (2014) (finding that healthcare providers who had reported a doctor to the North Carolina Medical Board for inappropriate and disruptive behavior had engaged in conduct that was "integral to their role in ensuring the provision of adequate medical care").

Here defendants are members of a learned profession because the complaint alleges that they are hospitals. (See compl. ¶¶ 4-5). In addition, the conduct in question is a rendering of professional services because the complaint alleges plaintiff received treatment at defendant Chowan Hospital's emergency room. (See compl. ¶¶ 57-64). Plaintiff argues that the hospitals' billing practices are not "directly related to providing patient care." Sykes, 372 N.C. at 334; (DE 54 at 33). This argument lacks merit. The facts of this case, a billing dispute arising from emergency care received from a hospital, hew even more closely to the UDTPA's language than those of Sykes, in which the North Carolina Supreme Court ruled plaintiff chiropractors' challenge to their exclusion from a network of providers covered by certain insurance payors barred by the exemption. See Sykes, 372 N.C. at 329-30. Plaintiff's own contentions that defendants "could

7

still operate at a profit if [they] charged a lower rate, such as the Medicare price," (DE 54 at 34), and that their "billing practices are not necessary for it to continue offering medical care at a profit," (DE 54 at 35), show that the level at which defendants are remunerated for services rendered is an essential component of their ability to provide care. Accordingly, plaintiff's UDTPA claim must be dismissed.

Plaintiff cites Jacobs v. Physicians Weight Loss Center of America, Inc., 173 N.C. App. 663, 671 (2005), for the proposition that "'exchange of money for services' provided by physicians 'are not protected by the learned profession exemption,'" (Plf's Resp. at 26-28) (quoting Jacobs v. Physicians Weight Loss Center of America, Inc., 173 N.C. App. 663, 671 (2005)), by inserting his own language in place of that used by the court. The full quote reads:

> The exchange of money for services to facilitate weight loss constitutes a business activity. No exemption applies, as none of defendants are physicians and are not protected by the learned profession exemption under the statute.

Jacobs, 173 N.C. App. at 671 (emphasis added). Jacobs, thus, is inapposite because it did not address the status of a hospital as a member of a learned profession.

Nor is the applicability of the learned profession exemption a question of fact, as plaintiff claims. The North Carolina Supreme Court upheld the grant of a motion to dismiss when it found "the alleged conduct . . . at the heart of [the] action . . . directly related to providing patient care." Sykes, 372 N.C. at 336. While the court in a case cited by plaintiff did rule after trial had concluded, the question of whether a court must wait for summary judgment or trial was never presented. See Cameron v. New Hanover Memorial Hospital, Inc., 58 N.C. App. 414, 447 (1982).

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss (DE 50) is GRANTED. The clerk is directed to close this case.

SO ORDERED, this the 27th day of March, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge